# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 |
| Jonathan Christian Bruntjen, | Case No. 11-45846 (RJK) |
| Debtor. | |
| Lantern Advisors, LLC, a Minnesota limited liability company, and Douglas Polinsky, | Adversary No: _____ |
| Plaintiffs, | |
| v. | |
| Jonathan Christian Bruntjen, | |
| Defendant. | |

## ADVERSARY COMPLAINT

Plaintiffs, Lantern Advisors, LLC and Douglas Polinsky, for their Complaint against Defendant Jonathan Christian Bruntjen, state and allege as follows:

### THE PARTIES

1. Plaintiff Douglas Polinsky ("Polinsky") is an individual residing in Hennepin County, Minnesota.

2. Plaintiff Lantern Advisors, LLC ("Lantern") is a Minnesota limited liability company with its principal place of business at 80 South 8th Street, #900, Minneapolis, Minnesota.

3. Defendant Jonathan C. Bruntjen (the "Debtor") is an individual residing at 440 Old Long Lake Road, Wayzata, Minnesota.

## STATEMENT OF JURISDICTION AND VENUE

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

5. This is an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure that relates to the above-captioned bankruptcy case. The bankruptcy case is pending in this district before this Court.

6. Venue properly lies in this judicial district as this is a proceeding related to a case under Title 11 of the United States Code pending before this Court.

## FACTS

7. The Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Code"), on September 2, 2011.

8. Lantern and Polinsky are in the business of investing in real property, and Polinsky owns 50% of Lantern.

9. The Debtor owns a 66.67% interest in Twin Cities Real Estate Partners, LLC ("TCREP"), a Minnesota limited liability company, which is in the business of real estate investments. At all relevant times the Debtor was TCREP's Chief Manager and controlled TCREP.

10. In or about January, 2009, Polinsky and Lantern agreed to finance various TCREP real property redevelopment projects.

11. In a series of separate transactions that took place between September 2009 and June 2010, Lantern and/or Polinsky advanced to TCREP in excess of $1 million to be used for rehabilitation of specific residential real properties.

12. All of the funds advanced by Polinsky and Lantern to TCREP were made in the form of loans, and were generally evidenced by promissory notes, and secured by personal guaranties, mortgages and security agreements.

13. Each of the separate loan transactions is summarized in the following table:

| PROPERTY | DATE | LOAN ADVANCE | NOTE From | GUARANTY By | MORTGAGE AND/OR ASSIGNMENT |
|---|---|---|---|---|---|
| **54 Stevens St., St. Paul**  **Property sold before state court action filed with credit for payment** | 10-23-09 | $121,569  (Polinsky) | TCREP, by The Debtor | The Debtor and Elizabeth Bruntjen | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |
| **260 Maria Avenue, St. Paul** | 12-02-09 | $65,000  (Lantern) | TCREP, by The Debtor | The Debtor and Elizabeth Bruntjen | N/A |
| **1082 Sims Avenue, St. Paul**  **Property sold before state court action filed with credit for payment** | 02-05-10 | $110,000  (Polinsky) | TCREP, by The Debtor | The Debtor | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |

3

| PROPERTY | DATE | LOAN ADVANCE | NOTE From | GUARANTY By | MORTGAGE AND/OR ASSIGNMENT |
|---|---|---|---|---|---|
| **709 York Avenue, St. Paul** | 12-30-09 | $123,000 (Polinsky) | TCREP, by The Debtor | The Debtor and Elizabeth Bruntjen | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |
| **358 Maria Avenue, St. Paul** | 02-28-10 | $92,750 (Polinsky) | TCREP, by The Debtor | The Debtor | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |
| **1085 Virginia Street, St. Paul** | 03-12-10 | $50,000 (Polinsky) | TCREP, by The Debtor | The Debtor | TCREP Collateral Assignment of contract interest |
| **715 Cook Avenue East, St. Paul** | 04-09-10 | $135,000 (Polinsky) | TCREP, by The Debtor | The Debtor | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |
| **81 Jessamine Avenue, St. Paul** | 05-14-10 | $116,000 (Polinsky) | TCREP, by The Debtor | The Debtor | N/A |

| PROPERTY | DATE | LOAN ADVANCE | NOTE From | GUARANTY By | MORTGAGE AND/OR ASSIGNMENT |
|---|---|---|---|---|---|
| **1003 Beach Street, St. Paul** | 06-18-10 | $115,000 (Lantern) | TCREP, by The Debtor | The Debtor | TCREP Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Statement |
| **1715 44th Avenue, St. Paul** | 06-11-10 | $117,500 (Polinsky) | TCREP, by The Debtor | The Debtor | N/A |
| **Unsecured Loan** | 09-09-09 | $35,000 (Polinsky) | N/A | J.C. Bruntjen | N/A |

14. On or about November 8, 2010, Lantern and Polinsky, on the one hand, and TCREP, the Debtor, and Elizabeth Bruntjen (the Debtor's wife), on the other hand, entered into an agreement captioned Memorandum of Understanding (the "MOU"), for purposes of consolidating all of the debts summarized in the table above into one consolidated Noted in the principal sum of $1,065,000.

15. By its terms, the MOU is intended to "modify and supersede existing agreements, and . . . to cover the entire relationship between" TCREP, the Debtor, and his wife.

16. Pursuant to the MOU, the Parties agreed, among other things, that:

(a) all of the Promissory Notes and all other debts then owing from TCREP, the Debtor and Elizabeth Bruntjen to Polinsky and Lantern shall be consolidated into a single debt, evidenced by a three-year promissory note (the "Consolidated Note") in the principal amount of $1,065,000 from TCREP and the Debtor, as Borrowers, to Polinsky, as Lender, effective November 1, 2010, which Promissory Note shall accrue interest at the rate of 8% per annum, with accrued interest payable each month, beginning with the first interest payment to be made on December 15, 2010, and the remaining interest payments to be made on or

before the 15th day of each month thereafter until fully paid, $50,000 payable on or before January 15, 2011, and a payment equal to the amount of the unpaid balance of any advance for any particular Property, less costs of renovation financing, shall be made each time a Property securing the Consolidated Note is sold or refinanced;

(b)  the debt evidenced by the Consolidated Note shall be secured by mortgages against all of the Properties detailed above, and all mortgages previously provided and attached as Exhibits to the Complaint shall remain valid and enforceable according to their terms (collectively the "Mortgages");

(c)  the Debtor and TCREP shall immediately pay Polinsky the sum of $131,313.22; and

(d)  the Consolidated Note shall be guaranteed by Elizabeth Bruntjen.

17.  On or about November 1, 2010, TCREP and the Debtor executed a Promissory Note evidencing the obligations detailed in the MOU (the "Consolidated Note").

18.  Specifically, the Consolidated Note provided:

(a)  TCREP and the Debtor shall pay Polinsky the sum of $1,065,000, effective November 1, 2010, with interest accruing at the rate of 8% per annum, with accrued interest payable each month, beginning with the first interest payment to be made on December 15, 2010, and the remaining interest payments to be made on or before the 15th day of each month thereafter until fully paid;

(b)  TCREP and the Debtor shall pay Polinsky the entire principal and interest due under the Promissory Note on or before November 1, 2013;

(c)  In the event of default, TCREP and the Debtor shall pay Polinsky all reasonable costs he incurs in connection with collecting the sums owed, including reasonable attorneys fees;

(d)  Upon an event of default, Polinsky is entitled to declare the entire unpaid principal and interest due and payable in full with TCREP and the Debtor having five days to cure any default;

(e)  The debt evidenced by the Consolidated Note was secured by mortgages against all of the Properties; and

(f)  All of the amounts owed under the Promissory note shall be personally guaranteed by Elizabeth Bruntjen.

6

19. TCREP and the Debtor failed, neglected and refused to make payments when due under the MOU, Consolidated Note and Mortgages, which failures constituted events of default.

20. As a result of TCREP's and the Debtor's defaults, Lantern and Polinsky commenced an action against TCREP and the Debtor, which matter was captioned <u>Lantern Advisors, LLC and Douglas Polinsky v. Twin Cities Real Estate Partners, LLC, et al.</u>, Court File No. 62-CV-11-1822 (ELO), Ramsey County District Court (the "State Court Action").

21. On or about August 2, 2011, a judgment was entered in the State Court Action against TCREP and the Debtor, jointly and severally, and in favor of Lantern in the principal amount of $209,999.75, which judgment was docketed on August 15, 2011.

22. On or about August 2, 2011, a judgment was entered in the State Court Action against TCREP and the Debtor, jointly and severally, and in favor of Polinsky in the principal amount of $746,716.48, which judgment was docketed on August 15, 2011.

23. During the course of this bankruptcy proceeding, including two meetings of creditors under 11 U.S.C. § 341 and a Rule 2004 Examination of the Debtor and TCREP, the Debtor has testified under oath that he has produced bank and other records from which an accounting of the funds advanced by Polinsky and Lantern may be prepared.

24. The Debtor's and TCREP's bank statements and other records produced to the Trustee do not evidence deposits of the funds advanced by Polinsky and Lantern, nor do they evidence disbursements of said funds, including any payments to third parties for work done in connection with the intended rehabilitation of the subject residential real properties.

25. Despite demand, the Debtor has failed to produce any invoices, receipts, accounting records, or any other documentation from which an accounting of the funds advanced by Polinsky and Lantern may be made.

7

26. Despite demand, the Debtor has failed to produce any personal financial records, TCREP records, or financial account records that sufficiently demonstrate the receipt, disbursements or current deposit status or physical location of the proceeds of the sums advanced by Polinsky and Lantern to the Debtor.

27. Despite demand and an opportunity to do so, the Debtor has failed to explain satisfactorily the loss of assets provided to him by Polinsky and Lantern.

28. The Debtor's failure to keep or preserve adequate recorded information, and his failure to provide a satisfactory explanation for his loss of assets, has prohibited Polinsky and Lantern from determining the Debtor's use of the sums advanced.

## CLAIMS FOR RELIEF

### COUNT I
### DENIAL OF DISCHARGE – 11 U.S.C. § 727(a)(3)

29. Polinsky and Lantern restate and adopt Paragraphs 1 though 28, above.

30. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained.

31. The Debtor is required to cooperate with Polinsky and Lantern and to provide documents under all reasonable requests under the local rules and the Bankruptcy Code.

32. The Debtor failed to retain and/or produce documentation of his conduct, and that of TCREP's, in relation to the sums advanced by Polinsky and Lantern, even though the Debtor is a sophisticated business person, owns and operates multiple entities, owns multiple bank accounts, retains the services of multiple accountants, and generally conducts business with numerous entities.

33. The gaps in documentation provided, particularly in regard to the deposit of sums advanced and the disbursement of said sums, indicates that the Debtor was intentionally selective in determining which documents to produce to Polinsky and Lantern, or, alternatively, that the Debtor entirely failed to document use of the funds advanced by Polinsky and Lantern. As a result of the lack of records, Polinsky and Lantern cannot ascertain how the Debtor has used or transferred the funds advanced to him.

34. Cause exists to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3).

## COUNT II
## DENIAL OF DISCHARGE – 11 U.S.C. § 727(a)(5)

35. Polinsky and Lantern restate and adopt Paragraphs 1 though 34, above.

36. The Debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities.

37. Cause exists to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Polinsky and Lantern respectfully request that this Court enter Judgment:

(a) Pursuant to 11 U.S.C. § 727(a)(3) declaring that the Debtor's discharge is denied;

(b) Pursuant to 11 U.S.C. § 727(a)(5) declaring that the Debtor's discharge is denied; and

(c) Providing such other and further relief as is just and equitable.

9

**HENSON & EFRON, P.A.**

Dated: March 19, 2012        By  /e/ John N. Bisanz, Jr.
                                David Bradley Olsen, 197944
                                John N. Bisanz, Jr., 0389098
                             220 South Sixth Street, Suite 1800
                             Minneapolis, Minnesota  55402-4503
                             Telephone:  612-339-2500

                             Attorneys for Plaintiffs

443928.DOC